UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JENELL K. HOFFMAN, an individual,

    Plaintiff,

v.

RED WING BRANDS OF AMERICA, INC., a Minnesota corporation; JESSICA HELSLEY, an individual; JASON PFAU, an individual; and CHARLES CAVANAUGH, an individual; inclusive,

    Defendants.

3:13-CV-00633-LRH-VPC

ORDER

Before the Court is Defendant Jessica Helsley's ("Helsley") Motion to Dismiss. Doc. #15.[1] Plaintiff Jenell K. Hoffman ("Hoffman") filed a Response (Doc. #22), to which Helsley replied (Doc. #28). Also before the Court is Defendants Charles Cavanaugh ("Cavanaugh") and Jason Pfau's ("Pfau") Motion to Dismiss. Doc. #40. Hoffman filed a Response (Doc. #42), to which Cavanaugh and Phau replied (Doc. #46).

**I.    Factual Background**

This suit arises out of Hoffman's employment with Red Wing, during which time she alleges she endured systematic sexual harassment at the hands of her supervisors, Helsley, Cavanaugh, and Pfau. These acts of harassment include requesting that Hoffman use her body in a

---

[1] Refers to the Court's docket number.

sexual and suggestive manner to sell work boots and shoes to male customers, subjecting Hoffman to crude and vivid sexual jokes, engaging in oral sex and sexual intercourse on company premises, and soliciting sex from Hoffman directly.  Hoffman's supervisors gave her consistently negative feedback when she refused to engage in the aforementioned activities.  Ultimately, Hoffman was fired from Red Wing for her resistance to what she characterizes as Red Wing's "perverse culture."

She filed a claim with the Nevada Equal Rights Commission ("NERC") and later the EEOC against Red Wing, alleging violations of Title VII for hostile work environment, retaliation, and quid pro quo sex discrimination.  During the course of the NERC/EEOC investigation, Red Wing claimed to be in possession of an email containing sexually explicit content, allegedly sent from Hoffman's personal account to Red Wing servers.  Hoffman denies ever having composed or sent such an email.

Hoffman filed the instant action on November 13, 2013, alleging causes of action for sex discrimination, quid pro quo sex harassment, and retaliation in violation of Title VII, as well as state law claims for defamation, intentional infliction of emotional distress, negligent hiring, and negligent retention.

**II.     Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550

U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the Court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The Court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

### III. Discussion

#### A. Helsley's Motion to Dismiss

Helsley seeks dismissal of Hoffman's fourth claim for defamation, her fifth claim for intentional infliction of emotional distress, and her sixth claim for intentional infliction of emotional distress.[2]

##### 1. Fourth Claim—Defamation

In Hoffman's fourth cause of action for defamation, she alleges that Helsley, Pfau,

---

[2] Hoffman's forth, fifth, and sixth causes of action are alleged against all Defendants, including Red Wing, Helsley, Cavanaugh, and Pfau. The remaining claims in Hoffman's lawsuit are alleged against Red Wing only.

3

Cavanaugh and/or another Red Wing employee disclosed a defamatory email to a third party within Red Wing. Doc. #10, ¶¶152-54. The email at issue contained sexually explicit material and was allegedly sent by Hoffman on her Red Wing account. *Id.* at ¶113. In her Motion to Dismiss, Helsley argues that the litigation privilege extends to communications made as part of a judicial proceeding, thereby barring Hoffman's defamation claim.

"Defamation is a publication of a false statement of fact." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 57 P.3d 82, 87 (2002). Generally, the elements of a defamation claim include: (1) a false and defamatory statement, (2) an unprivileged publication to a third person of the statement, (3) fault, amounting to negligence, and (4) actual or presumed damages. *See id.* at 90. Communications made as part of a judicial proceeding, however, are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. *See Clark Cnty. School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 213 P.3d 496, 502 (2009) ("[i]t is a 'long-standing common law rule that communications [made] in the course of judicial proceedings [even if known to be false] are absolutely privileged'") (quoting *Circus Circus Hotels v. Witherspoon*, 99 Nev. 56, 657 P.2d 101, 104 (1983)); *see also Fink v. Oshins*, 118 Nev. 428, 49 P.3d 640, 644 (2002). The litigation privilege extends to communications "preliminary to a proposed judicial proceeding" and those made in good faith contemplation of proceedings. *Fink*, 49 P.3d at 644.

Hoffman concedes that any alleged defamatory email disclosed to NERC is not actionable as against Helsley by virtue of the litigation privilege. *See* Doc. #22, p. 9. However, Hoffman argues that pre-proceeding publication of false and defamatory statements by Helsley, Cavanaugh, and Pfau to third parties, including third parties within Red Wing, is not privileged. Indeed, it appears Hoffman amended her Complaint to allege that the defamatory statement "originated with Helsley, Pfau, Cavanaugh and/or another employee of Red Wing" and was "uttered and/or supplied" by "any or all Defendants to any third party, including those third parties within Red Wing itself," "prior to her termination." Doc. #10, ¶¶152-54. Thus, Hoffman alleges that Helsley, Pfau, and/or Cavanaugh communicated the defamatory email to a third party within Red Wing long

4

before she initiated NERC proceedings and before Defendants could have reasonably anticipated such proceedings. As such, the litigation privilege does not apply. Moreover, Hoffman's claim sets forth the content and circumstances of the allegedly defamatory communication such that Defendants have adequate notice of the nature of the claim against them.[3] In sum, the Court finds that Hoffman has adequately pled a cause of action for defamation.

### 2. Fifth Claim—Intentional Infliction of Emotional Distress

Helsley does not assert that Hoffman has failed to establish any of the elements of an intentional infliction of emotional distress claim. Rather, Helsley argues that Title VII preempts Hoffman's claim for intentional infliction of emotional distress because it arises from the same set of alleged facts. The Court disagrees. It is well settled that Title VII does not subsume common law state tort remedies. *See Johnson v. Ry Express Agency, Inc.*, 421 U.S. 454, 459 (1975) ("Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief."). In *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1053-59 (9th Cir. 2007), the Ninth Circuit found that the plaintiff employee had established a prima facie case of both (1) hostile work environment sexual harassment under Title VII against her employer based on her supervisor's actions and (2) intentional infliction of emotional distress against her supervisor based on the same conduct that formed the basis for her Title VII claim.[4] Accordingly, Helsley's argument that Hoffman's fifth cause of action for intentional infliction of emotional distress may not proceed in light of her pending Title VII claims

---

[3] The Court notes that the details of the email, including the date it was sent, the date of publication, and to whom it was circulated prior to its disclosure to NERC are exclusively within the knowledge and control of Defendants.

[4] In light of *Craig*, the Court rejects Helsley's attempt to distinguish *Burns v. Mayer*, 175 F. Supp. 2d 1259 (D. Nev. 2001), on the basis that the defendants in *Burns* were not supervisors, but were merely co-workers. Moreover, while the NRS 613 framework did not apply in *Painter v. Atwood*, 912 F. Supp. 2d 962, 964-65 (D. Nev. 2012), the court nevertheless reiterated that common law tort claims based on sexual harassment are not preempted by NRS 613.

is without merit.

Hoffman bases her claims on two distinct and independent rights—her right to be free from discrimination at her work place and her right to be free from emotional injury intentionally caused by another person. As such, the harm or injury she alleges in her claim for intentional infliction of emotional distress is separate and distinct from the harm or injury she alleges in her Title VII claims. Accordingly, Hoffman's fifth cause of action for intentional infliction of emotional distress may proceed.

### 3. Sixth Claim—Intentional Infliction of Emotional Distress

The basis for Hoffman's sixth cause of action for intentional infliction of emotional distress is Defendants' intentional publication of the aforementioned defamatory email. Doc. #10, ¶167. Helsley argues that, because the litigation privilege applies to bar Hoffman's defamation claim, her derivative claim for intentional infliction of emotional distress must also be dismissed. Helsley's argument fails, however, because the Court determined that Hoffman adequately pled a cause of action for defamation. Accordingly, Hoffman's sixth cause of action for intentional infliction of emotional distress may proceed.

### B. Cavanaugh and Pfau's Motion to Dismiss

#### 1. Dismissal Under Rule 4(m)

First, Cavanaugh and Pfau assert that Hoffman failed to serve them with the summons and the complaint within the time frame required by Federal Rule of Civil Procedure 4 and that she lacks good cause and/or excusable neglect for her failure to timely serve them. Federal Rule of Civil Procedure 4(m) provides that if a defendant is not served within 120 days after the complaint is filed, the court must dismiss the action without prejudice against the defendant or order that service be made within a specified time. Here, Hoffman filed her original Complaint on November 13, 2013. Accordingly, the deadline for service was March 13, 2014. Hoffman concedes that she did not effectuate service on or before March 13, 2014 in accordance with Rule 4(m). Doc. #42, Ex. 1, ¶9.

Nevertheless, where a plaintiff fails to substantially comply with Rule 4(m), there are "two avenues for relief." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). First, a district court *must* extend the time for service when the plaintiff shows good cause for the delay. *Etaf v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007). "In the Ninth Circuit, a showing of good cause requires more than simple inadvertence, mistake of counsel, or ignorance of the rules." *Bonner v. Leon*, No. 2:13-cv-01858-APG-VCF, 2013 WL 6693649, at *2 (D. Nev. Dec. 17, 2013) (citing *Nat'l Union Fire Ins. Co. v. Monroe*, No. 2:10-cv-00385, 2011 WL 383807, at *1 (D. Nev. Feb. 2, 2011). Instead, courts generally equate "good cause" with diligence. *See id.* (citing Wright & Miller, Federal Practice and Procedure: Civil § 1337 (3d ed.)).

Second, "if good cause is not established, the district court *may* extend time for service upon a showing of excusable neglect." *Lemoge*, 587 F.3d at 1198 (emphasis added). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test[ ]" based upon *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380 (1993), and *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997).[5] *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citations omitted). That four factor equitable test requires, at a minimum, examination of: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* (citations omitted). Those four enumerated factors are not exhaustive however. *Lemoge*, 587 F.3d at 1195. "In some circumstances, the prejudice a denial would cause to the movant must also be considered, but it is not a fact that must be assessed in each and every case." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010) (internal quotation marks and citation omitted). Thus, "what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking

---

[5] *Pioneer* involved excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b), and *Briones* involved a Rule 60(b) motion for relief from judgment. The Ninth Circuit applies the *Pioneer*/*Briones* factors in a variety of contexts, though, including in deciding whether excusable neglect has been shown under Rule 4(m). *See Lemoge*, 587 F.3d at 1198.

account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Ultimately, "[d]istrict courts have broad discretion to extend time for service under Rule 4(m)." *Etaf*, 473 F.3d at 1041.

Here, the Court finds that Hoffman's counsel has failed to establish good cause warranting a mandatory extension of time under Rule 4(m). Hoffman's counsel did not make a formal attempt at service until long after the March 13, 2014 deadline had expired. Specifically, his first formal attempt at service was on June 12, 2014, when he hand delivered waiver of service forms to Cavanaugh and Pfau's counsel. Doc. #42, Ex. 1, ¶12. While he inquired into the possibility of waiver of service on February 25, 2014, Cavanaugh and Pfau's counsel clearly indicated at that time that Hoffman should "proceed as if she would not be able to accept service." *Id.* at ¶8. Hoffman's counsel did not follow up on this conversation. Nor did he seek an extension of time within which to effectuate service. Ultimately, he decided to "focus resources elsewhere" in light of the difficulty he was experiencing in locating Cavanaugh and Pfau and Hoffman's limited finances. *Id.* at ¶10. Finally, there is no indication that Cavanaugh and Pfau intentionally evaded service or that factors outside of counsel's control otherwise interfered with his ability to effectuate service. Considering these facts, the Court finds that Hoffman's counsel's actions simply do not evidence a reasonable or diligent effort to effect service or obtain a waiver or extension thereof. Accordingly, the Court finds that Hoffman's counsel has not demonstrated good cause.

Nevertheless, the Court concludes that dismissal is not warranted based on a finding of excusable neglect. First, Hoffman would suffer substantial prejudice in the event of dismissal as her claims are now time barred by the applicable statute of limitations. *See Etaf*, 473 F.3d at 1041 ("In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar[.]") (internal quotation marks and citation omitted). Second, under the circumstances, any delay in the proceedings caused by Hoffman's failure to effectuate service appears to be minimal at most. Discovery is well under way and both Cavanaugh and Pfau have already appeared for deposition. And while they claim they have not yet propounded any

discovery, they do not assert that they would require an extension of discovery in order to do so. Accordingly, the Court finds that any delay caused by Hoffman's failure to timely effectuate service will not affect the proceedings in any detrimental way. Third, Hoffman claims that the delay was attributable to difficulties in locating Cavanaugh and Pfau, as well as financial constraints. While the Court is unimpressed by Hoffman's explanation in this regard, the Court is equally unimpressed by Cavanaugh and Pfau's refusal to waive personal service when Hoffman's counsel initially inquired into the possibility on February 25, 2014. Had Cavanaugh and Pfau simply agreed to waive personal service at this juncture, much of the delay which is now at issue would have been avoided. Fourth, while Hoffman's explanation for the delay is weak, there is no indication that she or counsel acted in bad faith or intended to prejudice Cavanaugh and Pfau or manipulate the judicial process.

Finally, under the circumstances, the Court also considers relevant any prejudice to Cavanaugh and Pfau, whether they had actual notice of the lawsuit, and the fact that service has already been accomplished.[6] *See Etaf*, 473 F.3d at 1041 ("In making extension decisions under Rule 4(m) a district court may consider factors like . . . prejudice to the defendant, actual notice of a lawsuit, and eventual service.") (internal quotation marks and citation omitted). The Court rejects Cavanaugh and Pfau's claim that they will suffer prejudice because they have not yet propounded any discovery. Both Defendants have actively participated in this lawsuit by appearing for depositions. Moreover, any discovery that has been done to date on Red Wing's behalf will almost certainly benefit them. Finally, they undoubtedly had actual notice of the lawsuit well before the 120-day service deadline as they are represented by the same counsel who represents Red Wing.

Considering all of the aforementioned circumstances, the Court finds that Hoffman has made a sufficient showing of excusable neglect to warrant an extension of time for service.

---

[6] Hoffman's counsel hand delivered a formal waiver of service to Cavanaugh and Pfau's counsel at a deposition on June 12, 2014. Service was accomplished on July 14, 2014 when counsel appeared on behalf of Cavanaugh and Pfau.

1  Accordingly, Cavanaugh and Pfau's Motion to Dismiss is denied on this basis.

### 2. Failure to State a Claim

Second, Cavanaugh and Pfau join in Helsley's Motion to Dismiss. For the reasons set forth above, the Court finds that Hoffman's forth, fifth, and sixth causes of action may proceed against Cavanaugh and Pfau.

IT IS THEREFORE ORDERED that Defendant Helsley's Motion to Dismiss (Doc. #15) is DENIED.

IT IS FURTHER ORDERED that Defendants Cavanaugh and Pfau's Motion to Dismiss (Doc. #40) is DENIED.

IT IS SO ORDERED.

DATED this 15th day of September, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE